# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

FRANCES P. COLVIN, ADMINISTRATRIX v. H. LEE DAILEY.

June 13, 1935.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

The opinion states the case.

*E. H. DeJarnette, Jr.,* for the appellant.

*Shackelford & Robertson* and *Burnett Miller,* for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

Appellant, Frances P. Colvin, administratrix of J. W. Slaughter, deceased, filed her bill of complaint against Fulton R. Gordon and others, to recover of Gordon certain notes or bonds purchased by him from one A. L. Wilson. The bill alleges that in the year 1925, J. W. Slaughter, father of appellant, was the owner of a farm containing 240 acres; that on the 4th day of September, 1925, Slaughter sold and conveyed said farm to H. Lee Dailey for the sum of $11,000; that a deed of trust was executed co-temporaneously therewith to secure the three unpaid purchase money notes for $2,444.44 each, payable on or before one, two and three years after date respectively; that after the notes became due, J. W. Slaughter became *non compos mentis* and was incapable, by reason of his mental condition, of attending to his ordinary business affairs; that while "insane" he was induced by the fraud and misrepresentation of one A. L. Wilson, representing the Wilson Realty Company of Washington, District of Columbia, to exchange the Dailey notes for bonds of the Southern Granite Corporation which were at the time practically worthless; that Wilson sold the Dailey notes to Gordon, who was a purchaser with notice of the infirmities attached to same.

The prayer of the bill was that the notes be decreed to be the property of appellant.

Gordon, who is the real defendant, answered the bill, denying that he was acquainted with the facts and circumstances surrounding the purchase of the notes by Wilson. The answer further sets forth and the proof shows, that Gordon is engaged in the business of buying and selling bonds and other securities, with an office in Washington; that he is not "a shaver of notes" but is the owner of a business whose

book value amounts approximately to over a million dollars; that after interviewing Dailey, the maker of the notes, and after appraising the property, he purchased the notes from Wilson at the price of $3,625. The answer denied the allegation of the bill that Slaughter was insane at the time of the exchange of bonds, and relied upon the defense of laches.

The evidence was taken *ore tenus,* and upon the conclusion thereof, the court was of opinion and accordingly decreed that J. W. Slaughter, while not insane, was at the time of the transaction with Wilson "mentally as well as physically weak" and that he was "over-reached" by Wilson; that Gordon had no knowledge that Wilson had obtained said notes from Slaughter by fraud; that the transfer and assignment of the notes from Slaughter to Wilson and from Wilson to Gordon were not void but voidable and should be set aside; but, as Gordon obtained derivative title to the notes without knowledge of the original fraud of Wilson, that he is entitled to be reimbursed in the sum of $3,625, with interest due thereon. From that decree both appellant and Gordon have appealed.

The proof adduced by appellant relative to the insanity of J. W. Slaughter is not impressive and the court's holding on that phase of the case is clearly correct. We are also in thorough accord with the view of the trial court that Gordon was a purchaser for value without actual notice of any infirmity in the Dailey notes.

While subsequent events demonstrate that Slaughter exchanged good notes for bad ones, there is no oral proof that he was "over-reached." Unless we can say that the apparent feeble appearance of Slaughter is conclusive evidence that a fraud was perpetrated upon him, there is no proof whatever of fraud. No one other than Slaughter and Wilson was present when the trade was made. Slaughter is dead. Wilson did not testify. Consequently, the record is silent on what actually occurred when the exchange of notes took place, and we are unable to concur in the conclusion of the chancellor, that fraud is shown.

█ The defense of laches set up by Gordon should, in our opinion, be sustained, but for the fact that in the answer of Gordon he offered to surrender the notes to complainant upon the condition that he "be made whole." Gordon again in person made that offer to the trial court and repeated the offer when the case was argued in this court. The record discloses and the demeanor of Gordon conclusively shows that he is willing to waive his right to stand upon the letter of the law and reach an equitable adjustment of the case.

In our opinion, by reason of his self-imposed estoppel, he should be permitted to be generous to Slaughter's heirs who have slept upon their rights, if they ever had any.

A decree will be entered here in favor of Fulton R. Gordon for the sum of $4,125, with interest on $3,625, a part thereof, from April 26, 1929, less a portion of said interest that Gordon has received, to-wit:

$220 on the 4th day of September, 1929.

$220 on the 4th day of March, 1930.

$220 on the 4th day of September, 1930.

$220 on the 4th day of March, 1931.

As thus modified, the decree will be affirmed.

*Affirmed.*